# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ICU MEDICAL, INC.,                )
                                  )
            Plaintiff,            )
                                  )
      v.                          )         C.A. No. 07-468-JJF
                                  )
RYMED TECHNOLOGIES, INC.,         )
                                  )
            Defendant.            )         **JURY TRIAL DEMANDED**
                                  )

## ICU MEDICAL, INC.'S OPPOSITION
## TO RYMED'S MOTION TO TRANSFER VENUE

OF COUNSEL:

James Pooley
Marc Peters
Kimberly N. Van Voorhis
Diana Luo
Katherine Nolan-Stevaux
MORRISON & FOERSTER, LLP
755 Page Mill Rd.
Palo Alto, CA 94304
Tel:  (650) 813-5600

Dated:  October 29, 2007
828212 / 32116

Richard L. Horwitz (#2246)
Kenneth L. Dorsney (#3726)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19899
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

*Attorneys for Plaintiff ICU Medical, Inc.*

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   ARGUMENT...................................................................................................... 2

    A.    Private Interests Support Staying in Delaware ................................................ 2

        1.    ICU's Choice of Forum Should Be Respected ............................................ 2

        2.    RyMed Exaggerates Its Ties To California ................................................ 5

        3.    Delaware Is Convenient For Both Parties.................................................... 7

            a.    The Location Of Witnesses Does Not Favor Transfer.................. 7

            b.    The Location Of Documents Does Not Favor Transfer................ 9

    B.    The Public Interest Favors Litigating In Delaware ................................................ 9

        1.    Practical Considerations Weigh Against Transferring This Action ........ 10

            a.    ICU Filed This Case Months Before RyMed Took Any
Action In Any Forum.................................................................... 10

            b.    Rymed's Manufactured California Claims Do Not Create A
California Interest Sufficient To Override ICU's Original
Choice Of Forum ........................................................................ 11

            c.    Prior Litigation On Some Patents In Suit Does Not Warrant
Transfer ..................................................................................... 13

        2.    Transfer To the Central District of California Does Not Guarantee
Faster Resolution Than In Delaware........................................................ 15

III.  CONCLUSION................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

*ADE Corp. v. KLA-Tencor Corp.,*
 138 F. Supp. 2d 565 (D. Del. 2001)..................................................................3, 4, 8

*Affymetrix, Inc. v. Synteni, Inc.,*
 28 F. Supp. 2d 192 (D. Del. 1998)........................................................................3, 8

*Air Prods. & Chem., Inc. v. MG Nitrogen Servs., Inc.,*
 133 F. Supp. 2d 354 (D. Del. 2001)....................................................................10, 11

*Ampex Corp. v. Mitsubishi Elec. Corp.,*
 937 F. Supp. 352 (D. Del. 1996).............................................................................10

*Argos v. Orthotec LLC,*
 304 F. Supp. 2d 591 (D. Del. 2004).........................................................................4

*Bank of Am., N.A. v. S.I.P. Assets, LLC,*
 C.A. No. 07-159-GMS, 2007 WL 2698192 (D. Del. Sept. 11, 2007)......................11

*Cashedge, Inc. v. Yodlee, Inc.,*
 C.A. No. 06-170-JJF, 2006 WL 2038504 (D. Del. July 19, 2006).............................11

*Continental Cas. Co. v. Am. Home Assurance Co.,*
 61 F. Supp. 2d 128 (D. Del. 1999)............................................................................2

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,*
 821 F. Supp. 962 (D. Del. 1993)..............................................................................4

*Crosley Corp. v. Hazeltine Corp.,*
 122 F.2d 925 (3d Cir. 1941) .....................................................................................10

*Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.,*
 C.A. No. 1-199-SLR, 2001 U.S. Dist. LEXIS 20803 (D. Del. Nov. 18, 2001).........14

*Elizabethtown Water Co. v. Hartford Cas. Ins. Co.,*
 998 F. Supp. 447 (D.N.J. 1998) ...............................................................................8

*IKOS Systems, Inc. v. Cadence Design Systems, Inc.,*
 C.A. No. 02-1335-GMS, 2002 WL 31414136 (D. Del. Oct. 21, 2002) .....................7

*ISCO Int'l, Inc. v. Conductus, Inc.,*
 279 F. Supp. 2d 489 (D. Del. 2003)..........................................................................10

## TABLE OF AUTHORITIES
(continued)

Page

*Intel Corp. v. Broadcom Corp.,*
   167 F. Supp. 2d 692 (D. Del. 2001)...................................................................................3, 10, 11

*Jones Pharma, Inc. v. KV Pharm. Co.,*
   C.A. No. 03-786-JJF, 2004 U.S. Dist. LEXIS 2333 (D. Del. Feb. 17, 2004)..............................3

*Jumara v. State Farm Ins. Co.,*
   55 F.3d 873 (3d Cir. 1995) ....................................................................................................2, 10

*Nercon Eng'g & Mfg. v. Garvey Corp.,*
   No. 05-C-1339, 2006 WL 1207846 (E.D. Wis. May 1, 2006) .................................................13

*Nice Sys., Inc. v. Witness Sys., Inc.,*
   C.A. No. 06-311-JJF, 2006 WL 2946179 (D. Del. Oct. 12, 2006)............................................8

*Oracle Corp. v. epicRealm Licensing, LP,*
   C.A. No. 06-414-SLR, 2007 WL 901543 (D. Del. Mar. 26, 2007)...........................................14

*Pall Corp. v. Bentley Laboratories, Inc.,*
   523 F. Supp. 450 (D. Del. 1981)................................................................................................7

*SAS of Puerto Rico, Inc. v. Puerto Rico Telephone Co.,*
   833 F. Supp. 450 (D. Del. 1993)................................................................................................7

*Schering Corp. v. Amgen Inc.,*
   969 F. Supp. 258 (D. Del. 1997)................................................................................................9

*Shutte v. Armco Steel Corp.,*
   431 F.2d 22 (3d Cir. 1970) ........................................................................................................2

*Smithkline Corp. v. Sterling Drug, Inc.*
   406 F. Supp. 52 (D. Del. 1975)................................................................................................14

*Stratos Lightwave, Inc. v. E20 Commc'ns, Inc.,*
   C.A. No. 01-309-JJF, 2002 U.S. Dist. LEXIS 5653 (D. Del. Mar. 26, 2002).........................3, 5

*Total Care Physicians, P.A. v. O'Hara,*
   798 A.2d 1043 (Del. Super. 2001)...........................................................................................10

*Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.,*
   C.A. No. 04-360-JJF, 2005 U.S. Dist. LEXIS 2825 (D. Del. Feb 15, 2005)..............................3

## TABLE OF AUTHORITIES
(continued)

**Page**

*Truth Hardware Corp. v. Ashland Prods.*,
   C.A. No. 02-1541-GMS, 2003 U.S. Dist. LEXIS 409 (D. Del. Jan. 13, 2003)..........................13

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*,
   157 F.R.D. 215 (D. Del. 1993) ...................................................................................... *passim*

*Zoetics, Inc. v. Yahoo!, Inc.*,
   C.A. No. 06-108-JJF, 2006 WL 1876912 (D. Del. July 6, 2006).................................................3

## STATUTES & RULES

6 Del. C. §§ 2531 et seq..........................................................................................................10

28 U.S.C. § 1404(a) ....................................................................................................................2

35 U.S.C. § 271...........................................................................................................................5

Fed. R. Civ. P. 13(a) .................................................................................................................12

Fed. R. Evid. 804(a)(5) ...............................................................................................................4

California Bus. & Prof. Code § 17200.......................................................................................10

## I.    INTRODUCTION

ICU, a Delaware corporation, sued RyMed, a Delaware corporation, in this District on July 27, 2007. Now, two and a half months later, after getting two extensions from ICU, RyMed has filed a declaratory judgment action on the same patents in California. Simultaneously, it asks this Court to move the dispute to the district of the second-filed action, two thousand miles from RyMed's principal place of business in Franklin, Tennessee. It bases its motion on a carefully worded but deeply misleading representation that it has no "distributors . . . or hospital accounts within" Delaware, when in fact it (a) offers its infringing products to Delaware home care providers through a facility located just over the border in Salisbury, Md., and (b) employs a sales executive whose job description specifically includes promoting sales in Delaware. This lack of candor with the Court on a critical factual issue is enough by itself to justify denial of the motion. But analysis of the classical factors that apply to transfer motions also confirms that result.

ICU had a legitimate and rational basis for filing in Delaware, and RyMed presents no compelling reason to override ICU's choice of forum. Instead, RyMed tries to create the illusion of close ties to California while incorrectly denying any infringing activities in Delaware. The prior California cases RyMed cites do not support its argument of judicial economy: the Alaris matter, now on appeal to the Federal Circuit,[1] considered entirely different infringement proofs, and the Medegen matter, which has concluded with judgment in ICU's favor, covered completely different patents and products. Neither case remains pending in the Central District of California.[2]

This action involves simple mechanical technology used in an I.V. therapy valve. Because the four patents share a single, common specification, it is effectively a one-patent case.

---

[1]  Declaration of Katherine Nolan-Stevaux ("Nolan-Stevaux Decl.") ¶ 1, filed contemporaneously herewith.

[2]  *Id.* ¶ 2.

The documentary record is straightforward, and the witnesses (especially RyMed's) are close to Delaware. RyMed has failed to present evidence sufficient to dislodge this case from this forum.

## II.    ARGUMENT

Under 28 U.S.C. § 1404(a), in determining whether to transfer venue, two issues control: (i) whether venue is proper in the proposed alternate district, and (ii) which district would be more convenient and better serve the interests of justice. Here, RyMed has acknowledged that venue is proper in Delaware.[3]  The only question is whether venue in the second-filed case is clearly more convenient than in the first-filed.  To answer that question, courts must weigh both private and public interests *(Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)), giving substantial deference to the plaintiff's choice of forum in the first action.  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).  At all times, the burden is on the defendant to establish the need for transfer.  *Continental Cas. Co. v. Am. Home Assurance Co.*, 61 F. Supp. 2d 128, 131 (D. Del. 1999).  If the factors are evenly balanced or weigh only slightly in favor of transfer, the motion should be denied.  *Id.*

In this case, the relevant private and public interests weigh in favor of keeping this dispute in Delaware where it was first filed.

### A.    Private Interests Support Staying in Delaware

Private interest factors include: (1) plaintiff's choice of forum; (2) the site where the claim arose; and (3) the convenience of the parties. *Jumara*, 55 F.3d at 879.  All three factors support maintaining this case in Delaware.

#### 1.    ICU's Choice of Forum Should Be Respected

The plaintiff's choice of forum is entitled to substantial deference and "should not be lightly disturbed." *Shutte*, 431 F.2d at 25.  "[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Id.*  Delaware

---

[3]  RyMed has acquiesced to venue by filing counterclaims here.  On October 12, 2007, RyMed answered ICU's complaint for patent infringement, asserting counterclaims for non-infringement and invalidity.

2

courts routinely apply this rule. *See, e.g., Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.*, C.A. No. 04-360-JJF, 2005 U.S. Dist. LEXIS 2825, at *3 (D. Del. Feb 15, 2005); *Jones Pharma, Inc. v. KV Pharm. Co.*, C.A. No. 03-786-JJF, 2004 U.S. Dist. LEXIS 2333, at *4-*5 (D. Del. Feb. 17, 2004) (holding plaintiff's choice of forum entitled to substantial deference because both parties incorporated in Delaware); *Stratos Lightwave, Inc. v. E20 Commc'ns, Inc.*, C.A. No. 01-309-JJF, 2002 U.S. Dist. LEXIS 5653, at *7 (D. Del. Mar. 26, 2002) (defendant incorporated in Delaware).

ICU chose this District as its forum, and RyMed has not shown that litigating here constitutes a "unique or unusual burden on [its] operations" sufficient to warrant transfer. *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993) (denying transfer because defendant engaged in business throughout country and was incorporated in Delaware); *see Intel Corp. v. Broadcom Corp.,* 167 F. Supp. 2d 692, 706 (D. Del. 2001) (denying transfer because defendant sold products nationwide and could easily transfer documents due to technological improvements); *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 571-72 (D. Del. 2001) (holding defendant not significantly burdened because documents can be sent electronically and cost of trial in any district vastly outweighed expense of transportation and hotel rooms).[4]

Here, both parties are well-connected to Delaware and proceeding in this District would be convenient. Indeed, both parties are Delaware corporations.[5] This alone is a "rational and legitimate" reason for choosing to litigate in this forum. *Zoetics, Inc. v. Yahoo!, Inc.*, C.A. No. 06-108-JJF, 2006 WL 1876912, at *5-*6 (D. Del. July 6, 2006) (denying transfer because defendant incorporated in Delaware); *Intel*, 167 F. Supp. 2d at 706 (denying transfer because

---

[4] *Affymetrix, Inc. v. Synteni, Inc.* 28 F. Supp. 2d 192 (D. Del. 1998) does not contradict this analysis. The court granted transfer to the Northern District of California where **both parties** were headquartered and Affymetrix was incorporated at the time of filing. *Id.* at 194, 198-99. Here, in contrast, both parties are incorporated in Delaware with their headquarters on opposite sides of the country—ICU in California, RyMed in Tennessee.

[5] RyMed claims that it is "merely" a Delaware corporation (Mot. at 11), but presumably it derives some benefit from having adopted this State as its place of incorporation.

plaintiff incorporated in Delaware). By availing itself of the benefits of Delaware corporate law, RyMed "voluntarily exposed" itself to the possibility of litigating here. "Inconvenience" is not a credible excuse under these circumstances. *See Argos v. Orthotec LLC*, 304 F. Supp. 2d 591, 598 (D. Del. 2004); *ADE Corp.*, 138 F. Supp. 2d at 572-73 (distinguishing *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 29 505 (D. Del. 1999) and *Affymetrix*); *Wesley-Jessen*, 157 F.R.D. at 218; *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 821 F. Supp. 962, 965 (D. Del. 1993).

Nor can RyMed honestly claim that no infringing activities have taken place in Delaware. In a carefully hedged declaration, RyMed's Director and Chairman of the Board, Dana William Ryan, states that "RyMed does not have any . . . distributors . . . or hospital accounts within the state of Delaware." Ryan Decl. ¶ 6. This statement is extremely misleading, in two ways. First, Mr. Ryan seems to suggest that RyMed's InVision-Plus products are only distributed to hospitals. They are not. The InVision-Plus is available for the home care market as well. Declaration of Matthew Gingo ("Gingo Decl.") ¶ 3, Ex. A, filed contemporaneously herewith. Second, although RyMed may not have a distributor located "within" Delaware, it relies on a distributor, American HomePatient ("AHP"), to provide the accused product to nurses and patients for use in Delaware. *Id.* ¶¶ 4-6, Ex. B. AHP has a branch in Salisbury, Maryland, just seven miles from the Delaware border, and this facility supplies home care products to Maryland, Delaware, and Virginia. *Id.* ¶ 5.[6] In this sense, AHP in Maryland is no different from RyMed's California distributor. Ryan Decl. ¶ 4. The California distributor provides product to its local California area; AHP's Salisbury facility provides product to its local area, which includes Delaware.

---

[6] AHP has two distribution facilities located inside Delaware, but those facilities do not distribute I.V. therapy products, which are available only from the Salisbury facility. Thus, when an AHP home care patient in Delaware needs I.V. connection materials, they must be obtained from Salisbury. Gingo Decl. ¶¶ 4-5. (For obvious reasons, ICU has not yet deposed RyMed's distributor, and relies on Mr. Gingo's testimony pursuant to Fed . R. Evid. 804(a)(5).

4

RyMed's intention to reach Delaware with its accused products is confirmed by the fact that it employs a Territorial Manager whose job description includes express responsibility for overseeing sales into Delaware.  Declaration of Alison Burcar ("Burcar Decl.") ¶ 9, filed contemporaneously herewith.  RyMed also advertises and offers its infringing products for sale in a variety of national medical/health-related journals, several of which are distributed in Delaware.  *Id.* ¶ 8.  In addition, RyMed is a member of several national I.V. therapy organizations (that also have Delaware members) and has participated in numerous trade shows put on by those organizations in an effort to sell the accused products across the country.  *Id.* ¶¶ 6-7.

ICU expects to confirm through formal discovery that the accused products are used throughout Delaware and that RyMed actively distributes here as well.  But even if it turns out that, through some bizarre, coincidental string of business reversals, all of RyMed's sales efforts through its employees, distributors, advertising, and trade shows have failed to result in a single product being sold or used in Delaware, the law still favors Delaware venue.  RyMed is a "national" seller of medical devices,[7] and patent rights are national in scope.  *Stratos*, 2002 U.S. Dist. LEXIS 5653, at *8.  By offering its infringing products for sale throughout the country, Rymed is subject to litigation throughout the country, including in Delaware.  *See* 35 U.S.C. § 271; *Wesley-Jessen*, 157 F.R.D. at 218 (refusing to transfer case in part because alleged infringer did business throughout the country).[8]

### 2.    RyMed Exaggerates Its Ties To California

Just as it misleadingly understates its ties to Delaware, RyMed overemphasizes its ties to California, going so far as to boldly claim that the "geographic center" of this case is California.  Mot. at 2.  There are at least two fundamental flaws in that argument.  First, it focuses only on

---

[7]  Gingo Decl. Ex. A.
[8]  ICU also maintains a national network of sales personnel and distributors, and it sells its I.V. connectors into Delaware.  Burcar Decl. ¶ 5.

ICU's location[9] and ignores the reality of patent litigation, which deals primarily with infringement and damages.[10] Therefore, to the extent that geography matters at all in this patent case, the issues might most fairly be characterized as centered in Tennessee, where the infringing products were designed and the relevant documents about infringement and damages are located. But the second fundamental flaw, explained more fully below, is that the notion of a "geographic center" in a case like this is nonsensical, since documents are stored and delivered electronically, and there are no identified, legitimate third party witness issues.

Desperate for material to conjure a meaningful relationship with California, RyMed has turned to the most blatant form of self-help: on the same day it filed this motion – after two and a half months and two extensions to respond to the complaint filed in this Court – Rymed served ICU with its own complaint filed in the Central District of California. The California complaint seeks declaratory judgment of non-infringement and invalidity of precisely the same patents ICU has asserted in this case. RyMed also adds declaratory claims of non-infringement for an apparently modified version of the accused product as well as state and federal trademark/unfair competition claims. As we explain in Section B, below, if these claims are proper at all, they could just as easily have been filed here in Delaware. RyMed cannot be allowed to evade the rules and manufacture a "California interest" by the simple expedient of filing a second action in California on the same issues.

RyMed's other arguments of a tie to California are also illusory. For example, it makes no effort to explain why the location of its manufacturers relates to any issue likely to be litigated in the case. The key RyMed witnesses such as designers, sales personnel, finance and marketing directors all appear to be located at RyMed's corporate headquarters in Tennessee. Nolan-

---

[9]  On this point, which actually is not relevant to the balancing of interests, RyMed refers only to ICU's facility in San Clemente, California, ignoring its much larger operations in Salt Lake City, Utah.

[10]  Of course, RyMed will also undoubtedly raise invalidity claims, but there is no showing that any invalidity issues here have some geographic center apart from ICU's location, which, as noted, is not relevant to the calculus.

Stevaux Decl. Ex. C. That RyMed sells products directly to six hospitals in northern California also makes no difference and would, in any event, support filing in northern, not southern California, under RyMed's logic. Like all other medical device companies, RyMed sells its products across the United States. There is nothing unique about its relationship with California.

### 3.    Delaware Is Convenient For Both Parties

In addition to being a procedurally proper forum for ICU's infringement claims, Delaware is also significantly more convenient than RyMed's proposed alternative. Delaware is certainly convenient for ICU, which does business here and has chosen this State as its corporate home. Delaware is also convenient for RyMed. Indeed, Delaware is 1,200 miles closer to RyMed's Tennessee headquarters than Los Angeles. Nolan-Stevaux Decl. Ex. D. At a minimum, litigating here will reduce cross country travel time and expenses for RyMed's witnesses.

None of the cases RyMed cites compels a different conclusion. *SAS of Puerto Rico, Inc. v. Puerto Rico Telephone*, 833 F. Supp. 450, 453 (D. Del. 1993) concerned a local dispute between two companies both headquartered in Puerto Rico. The District of Puerto Rico was the only forum with any direct connection to the litigation. In *Pall Corp. v. Bentley Laboratories, Inc.*, 523 F. Supp. 450, 452 (D. Del. 1981), contrary to RyMed's argument, the court transferred the case because the plaintiff was not incorporated in Delaware but in New York where it also had its principal place of business, and the defendant was incorporated in Delaware but its principal place of business was in California. *Id.* The parties in *IKOS Systems, Inc. v. Cadence Design Systems, Inc.*, C.A. No. 02-1335-GMS, 2002 WL 31414136, at *1 (D. Del. Oct. 21, 2002) were both headquartered in California. Here, the parties are both incorporated in Delaware, RyMed's headquarters are in Tennessee and ICU's are in California. This forum is necessarily more convenient for RyMed than any district in California.

### a.    The Location Of Witnesses Does Not Favor Transfer

Nothing about the location of witnesses warrants transferring this case to California. In fact, as indicated above, Delaware is closer to RyMed's corporate headquarters, making it more

convenient for RyMed's employees.  Moreover, as RyMed admits in its moving papers, party employees carry no weight in the convenience analysis because each party is obligated to procure their appearance at trial. *Affymetrix*, 28 F. Supp. 2d at 203; Mot. at 14.

RyMed's concerns over subpoena power for third party witnesses are also imagined and unsupported.  RyMed mentions (without explanation or supporting evidence) three people "believed to have relevant information regarding inventorship" (Mot. at 6) who may need to testify, but it fails to articulate how their testimony would be important to the trial of this case or why that testimony would not be available through deposition.[11] *See Nice Sys., Inc. v. Witness Sys., Inc.*, C.A. No. 06-311-JJF, 2006 WL 2946179, at *2 (D. Del. Oct. 12, 2006) (denying transfer because defendant did not show that third party witnesses would be unwilling to voluntarily testify or that their testimony was not available by other means); *ADE Corp.*, 138 F. Supp. 2d at 570 (refusing to credit necessity of third party witnesses without demonstrated likelihood that their testimony would be presented at trial); *Affymetrix*, 28 F. Supp. 2d at 203 (discounting argument that third party fact witness was necessary and unavailable for trial). Moreover, the sole inventor on ICU's patents, George Lopez, is a company officer and is prepared to appear and testify in Delaware.  Nolan-Stevaux Decl. ¶ 4.

RyMed's professed worries over the availability of ICU's patent attorneys are similarly unfounded.  ICU's lead patent attorney has been deposed multiple times and was prepared to testify at trial in the Northern District of California (although the case settled during trial prior to his testimony).  Nolan-Stevaux Decl. ¶ 3; *see ADE Corp.*, 138 F. Supp. 2d at 570-71.  RyMed provides no credible evidence to suggest that he or any other ICU patent attorney will not be available to testify in this case, either by deposition or at trial if necessary.

---

[11] Anticipating that RyMed may try to supplement its factual record on reply, ICU objects and moves to strike any such proffer. *See Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 998 F. Supp. 447, 457 (D.N.J. 1998) (striking new arguments from reply brief).

### b.    The Location Of Documents Does Not Favor Transfer

There is certainly nothing special about document discovery that warrants transferring this case to California. In fact, discovery should be very straightforward. Technical and damages-related documents will come primarily from RyMed's headquarters in Tennessee, not from any location in California, where it has no employees. ICU's documents will come primarily from its headquarters in California. Because ICU is in one state and RyMed is in another, documents will need to be transferred some distance no matter where this case is tried.

Electronic discovery, which Delaware courts embrace as a convenient and easy method for transferring documents from a distant locale, eliminates any claim of burden based on location. *See, e.g., Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) ("[i]n the modern, spare-no-expense world of well-heeled companies involved in patent litigation, transferring documents from the West Coast to Delaware poses no large obstacle, and . . . transferring the case to California would not appreciably alleviate the cost of relocating relevant documents found in Colorado or Switzerland."); *Wesley-Jessen*, 157 F.R.D. at 218.

Finally, discovery of physical objects, such as the accused product, presents no difficulty whatsoever in this case. The products are very small—one to two inches in length. Indeed, the weight of RyMed's opening brief on this motion probably exceeds that of all the sample products that might be necessary for trial.

In sum, the private interest factors point toward keeping this case in Delaware, where ICU filed it. As Delaware corporations, both parties have a significant relationship with this forum, and RyMed has taken active steps to have its products marketed and used here. RyMed has demonstrated no significant burden from litigating in Delaware. In fact, despite its protestations otherwise Delaware is clearly more convenient to its headquarters than California.

### B.    The Public Interest Favors Litigating In Delaware

Courts consider several factors in determining whether the public interest weighs against transferring. They include: (1) practical considerations concerning trial; (2) the relative administrative difficulty associated with court congestion; (3) the enforceability of any

judgment; (4) the local interest in deciding local issues at home; (5) the public policies of the fora; and (6) familiarity with applicable state law. *Jumara*, 55 F.3d at 879-880. Only the first two factors are relevant here and both support keeping this case in Delaware.[12]

### 1.    Practical Considerations Weigh Against Transferring This Action

Practical considerations such as the location of the first-filed action, judicial economy and court resources all point toward maintaining this case in the district where it was initially filed. RyMed's later-filed California case, designed only to create a California interest and an argument about judicial economy, does neither and cannot support the requested transfer.

### a.    ICU Filed This Case Months Before RyMed Took Any Action In Any Forum

It is well-settled that "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941). Delaware courts follow this rule. *See, e.g.*, *Intel Corp.*, 167 F. Supp. 2d at 706 ("Broadcom cannot frustrate Intel's choice of forum by arguing that the court must transfer the case to another district where Broadcom later filed declaratory judgment actions."); *Air Prods. & Chem., Inc. v. MG Nitrogen Servs., Inc.*, 133 F. Supp. 2d 354, 356-57 (D. Del. 2001) (granting transfer where party filed suit in Southern District of Texas days *before* the action was filed). ICU filed and served this Delaware action two-and-half months before RyMed sued in

---

[12]  RyMed's assertion of California state law unfair competition claims can have no bearing on the analysis. RyMed could have asserted its unfair competition claims as counterclaims in this case under Delaware law. *See* Delaware Uniform Trade Practices Act, 6 Del. C. §§ 2531 et seq. (prohibiting disparagement of the goods, services, or business of another by false or misleading representations of fact); *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1058 (Del. Super. 2001). Moreover, Delaware courts have experience interpreting California Business & Professions Code §§ 17200 et seq. *See, e.g.*, *ISCO Int'l, Inc. v. Conductus, Inc.*, CA, 279 F. Supp. 2d 489, 506 (D. Del. 2003) (overturning jury verdict for unfair competition claims arising under Lanham Act and California Bus. & Prof. Code §17200); *Ampex Corp. v. Mitsubishi Elec. Corp.*, 937 F. Supp. 352 (D. Del. 1996) (discovery dispute in patent infringement action that included claim under California Bus. & Prof. Code §17200).

California and asked to have the case moved there. If RyMed had a legitimate issue with ICU's chosen forum, it could have and should have moved to transfer immediately.

        **b.**    **Rymed's Manufactured California Claims Do Not Create A California Interest Sufficient To Override ICU's Original Choice Of Forum**

RyMed's California complaint, filed in the Central District of California the day before RyMed filed this transfer motion, does not create a compelling California interest in ICU's Delaware patent action. The California litigation was initiated months after ICU filed its case. Generally, when a court transfers a case due to a pending litigation elsewhere, it is because that litigation existed prior to the filing of the case to be transferred. *See, e.g., Bank of Am., N.A. v. S.I.P. Assets, LLC*, C.A. No. 07-159 GMS, 2007 WL 2698192, at *3 (D. Del. Sept. 11, 2007) (granting transfer because defendant filed suit first in Florida two months earlier); *Cashedge, Inc. v. Yodlee, Inc.*, C.A. No. 06-170 JJF, 2006 WL 2038504, at *1 (D. Del. July 19, 2006) (granting transfer because previous action involving same parties and same patents had been pending for eleven months prior to filing of Delaware action); *Air Prods. & Chem.*, 133 F. Supp. 2d at 356-57 (granting transfer to Southern District of Texas where party filed suit days prior to filing of Delaware action). Here, prior to the filing of RyMed's California complaint, there was no pending litigation between the parties in any district in California on any of the patents at issue.[13]

RyMed's California complaint also reflects classic forum shopping, which alone warrants keeping this case in Delaware. *See Intel Corp.*, 167 F. Supp. 2d at 706 (refusing to transfer based on later filed declaratory actions in a distant forum). RyMed's tactical behavior is even more transparent given the location of its contacts in California compared to the district where it wants to litigate. For example, if the location of hospitals using RyMed devices were as important to jurisdiction as RyMed suggests, then it has no reason to be litigating in the Central District of California at all. None of the hospitals that RyMed identifies as selling to in California are located in the Central District; half are located in the Northern District. *See* Mot.

---

[13] Nolan-Stevaux Decl. ¶ 2. Moreover, Judge Pfaelzer entered final judgment in *Medegen MMS, Inc. v. ICU*, a matter that did not involve any ICU patents, on October 19, 2007. *Id.* Ex. B.

at 7; Nolan-Stevaux Decl. ¶¶ 5-8. ICU has also litigated its patents in the Northern District. *See ICU v. B. Braun Medical*, Case No. C01-3202. Indeed, ICU won summary judgment of infringement against B. Braun in the Northern District on a patent with the same specification as the one at issue here.[14] The district where RyMed wants to litigate, however, has been targeted only because certain claims of ICU's patents were found not infringed and invalid. Altemus Decl. Exs. B-C. Such classic forum shopping cannot reasonably support a transfer.

RyMed's effort to augment its California complaint with "local" flavor by asserting unrelated trademark/unfair competition claims also reflects the lack of any legitimate California interest in this action. By limiting its counterclaim in Delaware to the patent issues,[15] RyMed has acknowledged that the remaining trademark/unfair competition counterclaims are not compulsory and, thus, are unrelated to this patent action. *See* Fed. R. Civ. P. 13(a). Any potential interest California might have in litigating those claims (and here, RyMed has not asserted a single one)[16] are wholly separate from ICU's interest and right, as the plaintiff in this case, to have its patent claims heard in Delaware. RyMed's declaratory judgment claim directed to non-infringement of its future product, the InVision-Plus NEUTRAL with Modified Boot, does not change the analysis or create a separate California interest in this Delaware patent dispute. At the outset, it is not clear whether any court has jurisdiction over that claim because there may not be have been a sufficient case or controversy to seek a declaratory judgment in the first place. And, if a case or controversy does exist, it is only because the claim is already covered by ICU's Delaware complaint directed to RyMed's infringing products. Compl. ¶¶ 12, 16, 20, and 24.

---

[14] Judge Breyer's finding of infringement, which concluded that B. Braun's accused product contained every limitation of the asserted claims, was premised on his earlier claim construction order, which construed terms also found in claims asserted in this case. Nolan-Stevaux Decl. Exs. E-F.

[15] In addition to filing the instant motion, RyMed answered ICU's complaint on October 12, 2007 and asserted counterclaims for declaratory judgment of non-infringement and invalidity.

[16] Furthermore, the non-patent law claims are largely premised on federal statutes, not on California law, and thus, on balance, cannot favor transfer.

      c.      **Prior Litigation On Some Patents In Suit Does Not Warrant Transfer**

That ICU has previously litigated certain asserted patents in California also cannot support transfer. *See Nercon Eng'g & Mfg. v. Garvey Corp.*, No. 05-C-1339, 2006 WL 1207846, at \*2 (E.D. Wis. May 1, 2006) (refusing to transfer to forum where patents were previously litigated); *Wesley-Jessen*, 157 F.R.D. at 219 (refusing to credit court's own expertise with technology in deciding motion). This is true for at least three reasons.[17]

First, to the extent collateral estoppel issues may exist based on prior claim construction orders (and ICU does not concede that they do), such issues will be decided by whichever court entertains this case. *See Truth Hardware Corp. v. Ashland Prods.*, C.A. No. 02-1541 GMS, 2003 U.S. Dist. LEXIS 409, at \*4-\*5 (D. Del. Jan. 13, 2003) (denying transfer because Delaware court capable of understanding technology and of applying collateral estoppel).[18] Moreover, the extent of possible overlap of these essentially legal issues is extremely narrow. The Medegen case involved the assertion of Medegen's patent – which is not at issue in this case – against ICU's CLC2000, a type of product which is not at issue in this case. In the Alaris litigation, the only dispositive claim construction was of a single word: "spike." The RyMed product undeniably contains a spike, even under the definition adopted in California; and, even if RyMed claims it does not, the real issue, as described below, will be about the RyMed device, which is

---

[17] It also bears noting that RyMed assumes that its California case will be transferred within the Central District from the judge that now has it to Judge Pfaelzer. ICU has opposed RyMed's request for that transfer, and no decision has yet been received. In any event, RyMed is wrong in asserting that Judge Pfaelzer remains "actively involved" in related patent litigation. The Alaris case is finished and on its way to the Federal Circuit. Nolan-Stevaux Decl. ¶ 1. And final judgment has also recently been rendered in the Medegen litigation. *Id.* ¶ 2.

[18] Judge Pfaelzer issued a claim construction order directed to some of the asserted patents in the *ICU v. Alaris* matter; but only one of the construed claim terms ("spike") was relevant to her summary judgment ruling. Therefore, if collateral estoppel applies at all, it would be so only as to the meaning of a single word. Judge Breyer also issued a claim construction order in *ICU v. B. Braun* in the Northern District of California, construing terms from one of the patents in suit here. Altemus Decl. Ex. F; Nolan-Stevaux Decl. Ex. E.

quite different than Alaris'. Besides a ruling of noninfringement based on "spike," the California court issued a judgment of invalidity of other claims; but those claims are not asserted here.

Second, the California cases did not deal with RyMed's products, but with different products produced by other companies, with different theories of infringement, and of course with different damage issues. These differences are important, because they comprise the vast majority of the fact issues that will be litigated and presented to the jury in Delaware. *See Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, C.A. No. 1-199 SLR, 2001 U.S. Dist. LEXIS 20803, at *11 (D. Del. Nov. 18, 2001) (denying transfer in part because prior litigation involved different parties). In particular, the Alaris matter concerned the Alaris SmartSite and SmartSite Plus, products which are significantly different from RyMed's. In Medegen, the patented technology related to minimum fluid displacement/positive displacement connectors not at all relevant to the ICU patents asserted here. Therefore, even assuming for sake of argument some overlap in the legal issue of claim construction, any judge (and jury) considering this case would need to learn how RyMed's products work and the related infringement/non-infringement and damage positions of the parties. None of that has ever been considered by any California court.

Third, the technology at issue in this case is simple and mechanical. It requires no particular scientific or technological background to understand. *See Oracle Corp. v. epicRealm Licensing, LP*, C.A. No. 06-414-SLR, 2007 WL 901543, at *4 (D. Del. Mar. 26, 2007) (denying motion to transfer in spite of transferee court's expertise with software patents). Asking another district judge to oversee the issues in this case is hardly the daunting task RyMed portrays. That task is further simplified by the fact that the four asserted patents share a common specification. In effect, this case involves a single patent asserted against a relatively simple mechanical device.[19]

---

[19] This case is very different from *SmithKline Corp v. Sterling Drug, Inc.* on which RyMed relies, where the court observed that the "extreme factual complexity" of the technology warranted transfer to a court that was familiar with it. 406 F. Supp. 52 (D. Del. 1975). Moreover, that litigation arose from an interference proceeding between the parties, and the

### 2.     Transfer To the Central District of California Does Not Guarantee Faster Resolution Than In Delaware

Contrary to RyMed's argument, comparative time to resolution does not favor transfer to California. ICU's experience in the two litigations now concluded in the Central District of California suggests that litigating there could easily take significantly longer than litigating in Delaware. The Alaris matter took thirty-six months until a final judgment without a trial; and the Medegen matter, which involved just one patent, lasted fifteen months until it was disposed of by summary judgment in ICU's favor. Nolan-Stevaux Decl. ¶ 5. Patent case statistics (RyMed's figures were directed to all cases, not just patent cases) from April 2007 bear out ICU's experience in the Central District of California—Judge Pfaelzer averages a pendency to termination on the merits of 23.7 months and 40.6 months to jury trial. Nolan-Stevaux Decl. Ex. G at 27, 29.[20] This statistic is unsurprising; the California courts do not possess some special ability to resolve patent cases more quickly than in the District of Delaware, which enjoys a national reputation for efficient management of these specialized cases.

### III.     CONCLUSION

RyMed has been disingenuous with the Court in representing that it has no distributors "within" Delaware or sales to "hospitals" in Delaware. Cleary, it is offering its products for sale to Delaware health care providers, and almost certainly those products are currently in use in Delaware. RyMed is a Delaware corporation, and it has its headquarters in Tennessee, not California. Its attempt to spin a close connection between its business and the Central District of California utterly collapses on examination. Its own lawsuit there, filed months after this one, is nothing more than a bootstrap, entitled to no consideration. It is left with a single argument, that a judge in that district, in a case now headed to the Federal Circuit, has construed a single claim term that may or may not even be relevant in this case. RyMed's showing falls far short of what

---

Delaware action was filed nearly a month after, not before, the alleged infringer filed in Pennsylvania, where the previous litigation had occurred.
[20] In comparison, Judge Farnan averages a pendency to termination on the merits of 29 months but only 28.2 months for jury trials. Nolan-Stevaux Decl. Ex. H, at 26-28.

15

is necessary to upset ICU's choice of forum in this District, where both parties are incorporated,

and where the dispute can be at least as conveniently and efficiently resolved as it might be on

the other side of the country.  The motion to transfer should be denied.

POTTER ANDERSON & CORROON LLP


OF COUNSEL:

James Pooley
Marc Peters
Kimberly N. Van Voorhis
Diana Luo
Katherine Nolan-Stevaux
MORRISON & FOERSTER, LLP
755 Page Mill Rd.
Palo Alto, CA 94304
Tel:  (650) 813-5600

Dated:  October 29, 2007
828212 / 32116

By: */s/ Kenneth L. Dorsney*
    Richard L. Horwitz (#2246)
    Kenneth L. Dorsney (#3726)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19899
    Tel:  (302) 984-6000
    rhorwitz@potteranderson.com
    kdorsney@potteranderson.com

*Attorneys for Plaintiff ICU Medical, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Kenneth L. Dorsney, hereby certify that on October 29, 2007, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on October 29, 2007, I have Electronically Mailed the document to the following person(s):

Richard D. Kirk
Stephen B. Brauerman
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
rkirk@bayardfirm.com
sbrauerman@bayardfirm.com

Henry C. Bunsow
K.T. Cherian
Scott Wales
Howrey LLP
525 Market Street, Suite 3600
San Francisco, CA 94105
BunsowH@howrey.com
cheriank@howrey.com
waless@howrey.com

*/s/ Kenneth L. Dorsney*
Richard L. Horwitz
Kenneth L. Dorsney
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

811768 / 32116