**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ICU MEDICAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 07-468-JJF |
| v. | ) | |
| | ) | |
| RYMED TECHNOLOGIES, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF ICU MEDICAL, INC.'S OPPOSITION TO RYMED TECHNOLOGIES, INC.'S MOTION FOR REARGUMENT OF MEMORANDUM ORDER DENYING MOTION TO TRANSFER VENUE

Richard L. Horwitz (#2246)
Kenneth L. Dorsney (#3726)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

OF COUNSEL:

James Pooley
Marc Peters
Kimberly N. Van Voorhis
Diana Luo
Katherine Nolan-Stevaux
MORRISON & FOERSTER, LLP
755 Page Mill Rd.
Palo Alto, CA 94304
Tel: (650) 813-5600

*Attorneys for Plaintiff ICU Medical, Inc.*

Dated: February 25, 2008
850532 / 32116

# TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION ...................................................................................1

II.  SUMMARY OF THE ARGUMENT .......................................................1

III. RYMED FAILS TO MEET THE STANDARD FOR REARGUMENT OR RECONSIDERATION ...........................................................................2

    A.   RyMed's Motion Rehashes Arguments Considered And Rejected By The Court ...................................................................................2

        1.   The Court Considered And Rejected Judge Pfaelzer's Familiarity With ICU's Patents .........................................3

        2.   The Court Properly Considered And Rejected RyMed's Arguments About Its Modified Product .............................5

        3.   The Court Has Already Rejected RyMed's Forum Shopping Claims ...................................................................7

        4.   The Court Properly Considered And Rejected A Local California Interest Based On RyMed's State Law Claims .................7

    B.   RyMed's "New Evidence" Is Irrelevant, Misleading, And Inadmissible ........8

        1.   RyMed Signals That It Will Move For Reconsideration But Offers No Basis ...................................................9

        2.   While RyMed Kept ICU's Counsel At Bay, It Was Actively Attempting To Develop "New Facts" Through A Customer's Discussions With ICU ...............................................9

        C.   RyMed's Attempts To Derail This Case Must Stop .........................12

IV.  CONCLUSION .....................................................................................12

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Brambles USA, Inc. v. Blocker,*
735 F. Supp. 1239 (D. Del. 1990) .............................................................................4, 7

*Corning Inc. v. SRU Biosystems,*
C.A. No. 03-633-JJF, 2006 WL 155255 (D. Del. Jan. 20, 2006) ...........................2

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.,*
42 F. Supp. 2d 385 (D. Del. 1999)............................................................................2

*ICU Medical, Inc. v. B. Braun Medical Inc.,*
No. C 01-3202 CRB, 2005 WL 588341 (N.D. Cal. Mar. 14, 2005) ........................6

*Jumara v. State Farm Insurance Co.,*
55 F.3d 873 (3d Cir. 1995)........................................................................................3

*Kos Pharmaceuticals, Inc. v. Andrx Corp.,*
369 F.3d 700 (3d Cir. 2004)....................................................................................10

*Oracle Corp. v. epicRealm Licensing, LP,*
C.A. No. 06-414-SLR, 2007 WL 901543 (D. Del. Mar. 26, 2007)..........................3

*Samsung Elecs. Co. v. Rambus, Inc.,*
386 F. Supp. 2d 708 (E.D. Va. 2005) .......................................................................7

*SmithKline Corp. v. Sterling Drug, Inc.,*
406 F. Supp. 52 (D. Del. 1975)................................................................................4

*Stairmaster Sports/Medical Prods. Inc. v. Groupe Procycle, Inc.,*
25 F. Supp. 2d 270 (D. Del. 1998)....................................................................2, 4, 7

*Truth Hardware Corp. v. Ashland Prods.,*
C.A. No. 02-1541-GMS, 2003 U.S. DIST. LEXIS 409 (D. Del. Jan. 13, 2003)....................4

## RULES

Fed. R. Evid. 802 .......................................................................................................10

D. Del. LR 7.1.5.....................................................................................................1, 2

## I.    INTRODUCTION

Disappointed with the result it received the first time, RyMed admittedly brings the present motion to see if it "might better state what [it] tried to say the first time around." Declaration of Kimberly Van Voorhis ("Van Voorhis Decl."), Ex. A at 6:14-15. But RyMed presents no argument that the Court did not or could not have considered the first time. And the one "new fact" that it does offer appears to have been procured by RyMed specifically to give the appearance of a California interest, which this Court has already deemed irrelevant to the transfer analysis. Thus, whether RyMed seeks reargument or reconsideration of the Court's denial of its motion to transfer (it appears to be seeking both), the result is the same—RyMed's motion was properly denied the first time and it must be denied again.[1]

## II.    SUMMARY OF THE ARGUMENT

1.    The Court understood RyMed's position and RyMed's motion offers nothing more than a rehashing of previously rejected arguments.

2.    The Court properly considered and rejected RyMed's arguments based on Judge Pfaelzer's familiarity with the patents-at-issue.

3.    RyMed's modified product is at issue in this case, as acknowledged by Judge Pfaelzer's lack of interest in RyMed's declaratory patent claims.

4.    The Court already considered and rejected RyMed's attempt to color ICU's actions as forum shopping.

5.    RyMed's "new facts" are not relevant to the claims at issue in Delaware and are misleading.

---

[1]    Because this is a Motion for Reargument pursuant to Local Rule 7.1.5, briefing is now complete. Although RyMed has noticed this motion for hearing on March 7, 2008, ICU believes that the Court can decide this motion on the papers, as it did with RyMed's original motion.

## III.   RYMED FAILS TO MEET THE STANDARD FOR REARGUMENT OR RECONSIDERATION

RyMed's styles its motion as one for reargument under Delaware Local Rule 7.1.5

(entitled "Rearguments"), but it also seeks reconsideration by referring to "new facts" recently

"uncovered." *See* D.I. 26 at 1 ("This new information is a key reason why this Court should

reconsider its denial . . . ." "Reargument or reconsideration by the Court would shift the outcome

. . . ."); *id.* at 5, n.2. Although the standard for such motions is slightly different, RyMed's

motion cannot meet either one. *Corning Inc. v. SRU Biosystems*, C.A. No. 03-633-JJF, 2006 WL

155255, at *1 (D. Del. Jan. 20, 2006). Indeed, courts "sparingly" grant motions for reargument

or reconsideration (Del. Local Rule 7.1.5), and RyMed's motion is no exception.

### A.   RyMed's Motion Rehashes Arguments Considered And Rejected By The Court

It is well settled that motions for reargument "should not be used to rehash arguments

already briefed or to allow a 'never-ending polemic between the litigants and the Court.'"

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 419 (D. Del. 1999) (denying motion for

reargument/reconsideration). Nor can these motions be used as a vehicle "to supplement or

enlarge the record" on which a court made its original decision. *Stairmaster Sports/Medical*

*Prods. Inc. v. Groupe Procycle, Inc.*, 25 F. Supp. 2d 270, 292 (D. Del. 1998) (denying motion to

reargue). RyMed's motion for reargument tries to do both. There is no question that the Court

understood RyMed's arguments the first time they were made; yet RyMed insists on making

them again, this time with even more manufactured evidence.

Indeed, RyMed's attempt to re-plow old ground is so obvious that the Court need only

look to Attachment A of this motion to see that RyMed's present arguments are ***virtually***

***identical*** to the ones it made the first time around. For example, on pages 5 and 6 of its Reply

Brief in support of the original motion to transfer, RyMed sets forth by bullet point a "ledger" of

2

facts supporting litigation in Delaware and facts supporting litigating in California. D.I. 21.

Attachment A to the Motion for Reargument is a physical ledger or grid detailing these ***exact***

***same facts***.  Attachment A also professes to be an analysis of the factors set forth in *Jumara v.*

*State Farm Insurance Co.*, 55 F.3d 873 (3d Cir. 1995).  RyMed already raised those factors in its

original briefing, and the Court's order denying the motion to transfer followed *Jumara* to the

letter.  *See* Order at 3-11.  With the exception of RyMed's newly minted "evidence," which is

unreliable and irrelevant for reasons ICU discusses later in this opposition, anything RyMed

might have said in connection with this analysis was or could have been said the first time

around.  Raising it again in an effort to "better state what [it] tried to say the first time" (Van

Voorhis Decl. Ex. A at 6:14) is not what the Federal or Local Rules contemplated.  ICU briefly

addresses RyMed's rearguments below.

### 1.    The Court Considered And Rejected Judge Pfaelzer's Familiarity With ICU's Patents

RyMed first revisits Judge Pfaelzer's experience with some of the patents-in-suit. D.I. 26

at 5-6. The Court has already acknowledged this point and deemed it not dispositive: "The

Court acknowledges that the Central District of California's familiarity with the patents at issue

is a factor to consider, but the Court does not find that factor to be dispositive, particularly

where, as here, the ***technology at issue is not complex*** . . . ." Order at 11 (emphasis added).

Regardless, RyMed now argues that, although the technology at issue might not be

complex, the *Alaris* ***litigation*** was. D.I. 26 at 5. This is irrelevant for several reasons. First,

when considering the complexity of prior proceedings in the transfer analysis, courts focus on

the complexity of the technology, not the litigation itself. *Oracle Corp. v. epicRealm Licensing,*

*LP*, C.A. No. 06-414-SLR, 2007 WL 901543, at \*4 (D. Del. Mar. 26, 2007) (denying transfer in

3

spite of prior experience with technology); *SmithKline Corp. v. Sterling Drug, Inc.*, 406 F. Supp. 52 (D. Del. 1975) (ordering transfer based on extreme technical complexity).

Second, whether or not the complexity of litigation is important, RyMed has already discussed the *Alaris* proceedings. In its original motion, RyMed told this Court that Judge Pfaelzer construed claim terms in three of the four patents in suit, that she had an "extensive understanding" of the patents and the file histories, and that the judge had entertained motions regarding infringement and invalidity. D.I. 21 at 7. The Court recognized these facts in its Order, referring to "substantial litigation in the Central District of California" (Order at 9), but still it was deemed insufficient to tip the balance in favor of transfer.

That RyMed now punctuates this argument with additional, unhelpful details such as the number of docket entries from the *Alaris* case, the number of months Judge Pfaelzer spent considering *Markman* and summary judgment issues and the number of pages from those submissions does not change the analysis.[2] As an initial matter, these details could have been brought to this Court's attention in RyMed's original motion to transfer. That they were not is alone sufficient for the Court to disregard them now. *See Stairmaster Sports*, 25 F. Supp. 2d at 292 (stating reargument cannot be used to supplement record); *Brambles USA, Inc., v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990) ("reargument . . . should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided.").

---

[2] As ICU stated in its prior briefing, if collateral estoppel issues may exist based on prior claim construction orders, such issues will be decided by whichever court entertains this case. *See Truth Hardware Corp. v. Ashland Prods.*, C.A. No. 02-1541-GMS, 2003 U.S. Dist. LEXIS 409, at *4-*5 (D. Del. Jan. 13, 2003) (denying transfer because Delaware court capable of understanding technology and of applying collateral estoppel).

But even if all these minutiae had been identified the first time, it would have brought nothing new to the transfer analysis. A summary judgment motion regarding infringement by an *Alaris* product (no matter how many pages) makes no difference to a summary judgment motion regarding infringement by a *RyMed* product.[3] A motion for invalidity directed to patent claims *not asserted in the instant case* is also not relevant, nor is a motion for sanctions that relates to preliminary relief not sought here. The number of docket entries is essentially useless, not simply because Judge Pfaelzer was not involved in the first year and a half of the *Alaris* litigation (which alone generated more than 300 docket entries), but also because different cases have different motions and case filing requirements (*e.g.*, stipulations, order, minutes, etc.). *See* Van Voorhis Decl. ¶ 10. Even if the case were transferred to Judge Pfaelzer, it would not "bypass" regular motion practice or other administrative aspects of the case.

The Court properly apprehended RyMed's arguments regarding the *Alaris* litigation and rejected them, because the *Alaris* litigation involved different products, infringement theories, and damages issues. Order at 10.

### 2. The Court Properly Considered And Rejected RyMed's Arguments About Its Modified Product

RyMed next argues that, because the Court did not specifically refer to the declaratory claims directed to its modified InVision-Plus product, it must have overlooked them. As an initial matter, the Court did acknowledge this claim when it indicated that "[a] patent infringement defendant should not be able to strengthen its case for transfer by the filing of a declaratory judgment action in the forum of its choice." Order at 10-11.

---

[3] One important difference between the two products is that Judge Pfaelzer found Alaris's products lacked the claimed spike, while RyMed's own patents indicate that its product contains this claim element. *See* Van Voorhis Decl. Ex. B (patent covering product identifying "spike 104"). This and other significant differences obviate any need for this Court (or any Court) to review the "hundreds of pages" of *Alaris* submissions.

5

But although the Order did not address any specific version of RyMed's InVision-Plus product (and it was not required to do so), ICU's Delaware complaint clearly covers all versions: "RyMed's infringing activities in the United States and this District include the development, manufacture, use, importation, sale, and/or offer for sale of products, *including but not limited to its InVision Plus valve*." D.I. 1 at ¶ 12. ICU has identified this language in its opposition to RyMed's motion to transfer and in its motion to dismiss RyMed's California action and RyMed has ignored it every time.

RyMed's citation to *ICU Medical, Inc. v. B. Braun Medical Inc.*, No. C 01-3202 CRB, 2005 WL 588341, at *10-*11 (N.D. Cal. Mar. 14, 2005),[4] which ICU cited in its motion to dismiss the California action, underscores ICU's point. In that case, B. Braun advanced the same arguments that RyMed does—that a generic allegation of infringement could not encompass a related but newly modified product. Judge Breyer rejected that argument and found that the newly modified product was encompassed by ICU's complaint. The same holds true here.[5]

Judge Pfaelzer also seems to agree that RyMed's modified InVision-Plus product is properly before this Court. During the teleconference on ICU's motion to dismiss or in the alternative stay the California litigation pending this Court's order on the motion to transfer, Judge Pfaelzer's sole concern was over the state law claims: "I want to just say that I have read the decision of the judge in Delaware, and *I am prepared to dismiss this case*. I only have just a slight problem that I want to talk to you about and that is those claims that have to do with state

---

[4] Although ICU brought up this case twice in its briefing in the California action, RyMed did not address it there.

[5] Curiously, RyMed has indicated since October that a modified product is coming, but it has yet to release it to the public or to provide ICU with any information about it. This is precisely why ICU's complaint is worded the way that it is. To bind ICU to litigate only the existing product would allow RyMed to delay a finding of infringement indefinitely pending the release of a "new and improved" valve.

law causes of action." Van Voorhis Decl. Ex. A at 3:15-19. Judge Pfaelzer was not concerned about the modified product because it is already covered in this Delaware case.

### 3. The Court Has Already Rejected RyMed's Forum Shopping Claims

Despite RyMed's cries of forum shopping, this Court has already determined that ICU, a Delaware corporation, properly filed suit in this District against another Delaware corporation. Order at 5, 7. Nevertheless, RyMed continues its protest. In particular RyMed now cites to *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708 (E.D. Va. 2005), claiming that ICU, like Rambus, does not want to litigate in a different jurisdiction because of what RyMed characterizes as an unfavorable ruling in that district. But RyMed made this argument originally (D.I. 11 at 1; D.I. 21 at 1), and this Court has already rejected it. *See* Order at 9. More importantly, RyMed's attempt to bolster its original argument by citing to a case that it apparently overlooked the first time is improper. *See Stairmaster Sports*, 25 F. Supp. 2d at 292; *Brambles*, 735 F. Supp. at 1240.

But whether RyMed had cited to *Samsung* in its original papers or not, the case is inapposite. Samsung and Rambus were already in the middle of patent litigation in two different districts on opposite sides of the country. Rambus' general counsel told Samsung that Rambus would avoid the Eastern District of Virginia for litigation and attempted to obtain an agreement with Samsung that ensured Rambus chose the venue for any litigation. 386 F. Supp. 2d at 713. Those facts don't exist here. ICU's bases for selecting Delaware as the forum for its case were proper, as this Court has already determined. Order at 5, 7.

### 4. The Court Properly Considered And Rejected A Local California Interest Based On RyMed's State Law Claims

But for accusing the Court of apparently not getting it right the first time, RyMed offers nothing new to support its manufactured California claims. The Court has rejected RyMed's

arguments of convenience and interest based on witness and document location; it has reiterated

that patent claims are national in scope; and it has admonished RyMed for attempting to "'create'

a California interest by attaching state law claims to its later-filed declaratory judgment action."

*Id.* at 10-11. The Court has also correctly stated that any efficiencies that might be achieved by

consolidating the cases in California are "entitled to very little consideration." *Id.* at 10.

Pointing to RyMed's admission that it sells its products nationwide, the Court found no local

interest weighing in favor of transferring this case to California. *Id.* at 11.

As ICU has already explained (but does here again in response to RyMed's resurrected

argument) the majority of the so-called "California" claims rest on federal law, not California

state law. D.I. 16 at 12. And even the state law claims center on activities outside of California:

the allegedly false statements were not made to California customers;[6] the FDA's recall action

centered on an inspection of RyMed's Texas facility (Van Voorhis Decl. Ex. C.); and the tort

claims relate to a Seattle-based distributor (Van Voorhis Decl. Ex. D). The Court properly

understood the true nature of these claims and rejected RyMed's insistence that they implicate

California.

### B. RyMed's "New Evidence" Is Irrelevant, Misleading, And Inadmissible

Refusing to accept that its manufactured California claims are improper and insufficient

to compel transfer, RyMed now tries to submit even more irrelevant and unconvincing evidence

on these improper claims. But the "new evidence" RyMed claims supports "an even stronger

local interest" (D.I. 26 at 9) adds nothing to its failed argument and is, itself, manufactured and

grossly misleading.

---

[6] *See* Section B for a discussion of RyMed's "new" allegation of a single customer conversation. RyMed has not identified any hospital or distributor within the state of California to whom ICU allegedly made any false statements.

As an initial matter, RyMed did not simply stumble upon this information as it suggests. To the contrary, its customer actively sought the statements from ICU, made them over to such a degree that they barely resembled what was actually discussed, and then regurgitated them to RyMed. All of this bears the scent of collusion. Indeed, RyMed's refusal to disclose this "new evidence" to ICU in a meet and confer seemed odd at the time. Van Voorhis Decl. ¶¶ 8-9. Now, in the light of the actual facts, it is deeply troubling.

### 1.  RyMed Signals That It Will Move For Reconsideration But Offers No Basis

Immediately after this Court denied RyMed's motion to transfer, ICU asked RyMed to withdraw its California complaint. After considering that request for several days, RyMed refused. Nearly a week later, on January 30th, when Judge Pfaelzer stated that she was inclined to dismiss RyMed's California complaint based on this Court's order, RyMed indicated, for the first time, that it intended to seek reconsideration of the order. Van Voorhis Decl. ¶ 5. Counsel for the parties discussed the timing of RyMed's motion briefly after that, at which point RyMed indicated that it would be filing shortly. *Id.* at ¶¶ 6-7. At the end of the week (February 1st), after no motion had been filed, ICU asked when it would be forthcoming. *Id.* At this point, counsel revealed that a "new fact" had arisen that had delayed the filing. As part of the meet and confer process, ICU requested disclosure of that fact several times, but RyMed refused to disclose it. *Id.* at ¶¶ 8-9.

### 2.  While RyMed Kept ICU's Counsel At Bay, It Was Actively Attempting To Develop "New Facts" Through A Customer's Discussions With ICU

Both Ms. Burcar and Mr. Pratt (the two ICU employees referenced in Mr. Ryan's declaration) had discussions with Mr. Nibarger, the President of Fluidnet. As Ms. Burcar explains in the accompanying declaration, however, the questions Mr. Nibarger asked her

9

(specifically those relating to positive, negative and neutral displacement) seemed out of place. Declaration of Alison Burcar ("Burcar Decl.") ¶¶ 3-4. Nevertheless, she answered them openly and honestly. Ms. Burcar spoke to Mr. Nibarger on January 28th (Burcar Decl. ¶ 3), *after* RyMed had refused to withdraw its California complaint but *before* it announced its plan to move for reconsideration. Mr. Pratt did not speak to Mr. Nibarger until February 4th, but he confirmed that Mr. Nibarger had left him a message on the night of Friday February 1st. Declaration of Greg Pratt ("Pratt Decl.") ¶ 4. According to his sworn declaration, however, Mr. Ryan says he spoke with Mr. Nibarger and got the details of the Pratt conversation on January 31st—four days *before* the conversation took place. Ryan Decl. (D.I. 29) ¶ 3. Apparently Mr. Nibarger knew what he wanted Mr. Pratt to say before he ever spoke to him.[7]

In addition to being an obvious set-up, the "facts" RyMed did gather are exaggerated and, in most instances, not true. For example, although Ms. Burcar did tell Mr. Nibarger that RyMed's seal is problematic, she made clear that that conclusion was based on ICU's experiments on the valve. Burcar Decl. ¶ 5. Ms. Burcar's statement that the FDA recalled RyMed's device is also true. *See* Van Voorhis Decl. Ex. C. But Ms. Burcar never mentioned any particular institutions affected by the recall. Burcar Decl. ¶¶ 5-6. The remaining statements alleged to have been said by Ms. Burcar or Mr. Pratt are not true. Neither Ms. Burcar nor Mr. Pratt said that RyMed would be shut down. *Id.* at ¶ 6; Pratt Decl. ¶ 5. And neither one stated that ICU "had RyMed so mired in expensive patent litigation that RyMed can't see the light of

---

[7] The inherent unreliability of such statements is precisely why the hearsay rule exists, and it is proper to exclude them for that purpose. *See* Fed. R. Evid. 802. RyMed fails to identify any case in support of its assertion that inadmissible evidence is proper for a motion for reargument or reconsideration. *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004) concerns the propriety of allowing hearsay permitted on a preliminary injunction application and does not state that it is allowed in any other context. If this fact was so "key" to RyMed's motion, it should have submitted a declaration under oath from Mr. Nibarger.

day." Burcar Decl. ¶ 7; Pratt Decl. ¶ 5. Ms. Burcar only mentioned that ICU enforced its patents and RyMed had a patent infringement issue. Burcar Decl. ¶ 7. Finally, Mr. Pratt's conversation with Mr. Nibarger centered on the CLAVE and did not mention RyMed at all. Pratt Decl. ¶ 4.

In addition to mischaracterizing conversations with ICU employees, Mr. Ryan's declaration also blatantly misleads the Court about Fluidnet's connection to California. Ryan Decl. ¶ 3. Fluidnet is *not* based in California and does not appear to have any California facilities. Instead, as prominently stated on its website, Fluidnet is "[b]ased on the seacoast of scenic New Hampshire." Van Voorhis Decl. Ex. E.[8] Thus, even if ICU had made the statements identified in Mr. Ryan's declaration (and it did not), and even if those statements somehow affected Fluidnet, the harm would have occurred to the company itself, in New Hampshire. Like RyMed's other mock "California" claims, litigating this one in Delaware would also be substantially easier for the parties.

Finally, even if the Court looked beyond Mr. Ryan's misleading statements and accepted everything in his suspect declaration as true, the fact that Mr. Nibarger is unwilling to testify in Delaware is *still* irrelevant. When this Court discussed the unavailability of witnesses, it was referring to the claims before this Court—ICU's patent claims and RyMed's corresponding counterclaims. Order at 1-2, 8. RyMed's manufactured state law claims have no bearing on the instant case, as they have not been filed here; so the fact that a witness might be unable to testify on them is inapposite.

In sum, RyMed's new evidence is manufactured, misleading, and irrelevant and, if considered by this Court at all, should only confirm that its original decision to keep this case in Delaware was the right one.

---

[8] Like ICU and RyMed, Fluidnet is also a Delaware corporation. Van Voorhis Decl. Ex. F.

### C.    RyMed's Attempts To Derail This Case Must Stop

RyMed baldly accuses ICU of wanting to litigate in Delaware "to increase the costs of litigation for RyMed." D.I. 26 at 1. Yet, ironically, nearly all of the expenses incurred in this case to date are the result of RyMed's refusal to move forward in ICU's original choice of forum. RyMed brought this motion to transfer; RyMed filed manufactured claims in California solely to avoid litigating in Delaware; RyMed forced ICU to move to dismiss the California action under the first-to-file rule; and even after both the Delaware and California courts were satisfied that this case should move forward in Delaware, RyMed still refused to proceed, forcing ICU and the Court to respond to yet another motion. ICU has incurred a small fortune in attorneys' fees dealing with RyMed's litigation delay tactics, and each day that RyMed's infringing product remains on the market, ICU's business is injured as well. It is time for RyMed to move forward and defend against ICU's infringement claims.

## IV.    CONCLUSION

RyMed offers no credible or compelling reason for the Court to revisit or reconsider its denial of RyMed's motion to transfer. Indeed, the Court has already considered and rejected each of the arguments RyMed presents here. RyMed's motion for reargument should be denied.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

James Pooley
Marc Peters
Kimberly N. Van Voorhis
Diana Luo
Katherine Nolan-Stevaux
MORRISON & FOERSTER, LLP
755 Page Mill Rd.
Palo Alto, CA 94304
Tel: (650) 813-5600

By: /s/ Kenneth L. Dorsney
    Richard L. Horwitz (#2246)
    Kenneth L. Dorsney (#3726)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19899
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    kdorsney@potteranderson.com

Dated: February 25, 2008
850532 / 32116

*Attorneys for Plaintiff ICU Medical, Inc.*

12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Kenneth L. Dorsney, hereby certify that on February 25, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on February 25, 2008, the attached document was Electronically Mailed to the following person(s):

Richard D. Kirk
Stephen B. Brauerman
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
rkirk@bayardfirm.com
sbrauerman@bayardfirm.com

Henry C. Bunsow
K.T. Cherian
Scott Wales
Howrey LLP
525 Market Street, Suite 3600
San Francisco, CA 94105
BunsowH@howrey.com
cheriank@howrey.com
waless@howrey.com

*/s/ Kenneth L. Dorsney*
Richard L. Horwitz
Kenneth L. Dorsney
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
kdorsney@potteranderson.com

811768 / 32116